**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LEE WILLIAMS,

                           Plaintiff,

       - v -                                                  Civ. No. 9:10-CV-635
                                                                         (TJM/RFT)

D.E. LaCLAIR, *Superintendent, Franklin Correctional Facility*; S. BROWN, *Deputy Superintendent for Security*; N. ARMSTRONG, *Nurse Administrator*; JANE DOE, *Mailroom Supervisor*,

                           Defendants.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

LEE WILLIAMS
Plaintiff, *Pro Se*
99-B-1222
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN                  RICHARD LOMBARDO, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants LaClair, Brown, & Armstrong
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Lee Williams brings this civil rights Complaint, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. Defendants Darwin LaClair, Stephen Brown, and Nancy Armstrong have moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 28. Plaintiff opposes the Motion. Dkt. No. 36. For the reasons that follow, it is recommended that Defendants' Motion be **granted in part** and **denied in**

**part**. It is further recommended that, pursuant to the authority granted to this Court under 28 U.S.C. §§ 1915(e) and 1915A, the claims against Defendant Jane Doe be **dismissed**.

## I. BACKGROUND

On July 15, 2010, Plaintiff's Application to Proceed *in Forma Pauperis* was granted; in that same Order, the Honorable Thomas J. McAvoy, Senior United States District Judge, determined that Plaintiff's Complaint was inadequate and directed Plaintiff to submit an amended complaint should he wish to continue with the action. Dkt. No. 9. Plaintiff thereafter submitted an Amended Complaint, and service on the Defendants was directed by Judge McAvoy.[1] Dkt. No. 10, Am. Compl.; Dkt. No. 11, Dec. and Order. The following facts are, in accordance with the applicable standard of review, derived from the Amended Complaint and taken as true.

At all times relevant to the matters complained of in the Amended Complaint, Plaintiff was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and was housed at the Franklin Correctional Facility. *See generally* Am. Compl. In March 2008, upon his arrival at Franklin, Plaintiff was informed by an unnamed sergeant that Franklin had a "hands on policy," which, in effect, sanctioned the physical beating of inmates by corrections officers. *Id*. at ¶ 1. During his first year at Franklin, Plaintiff witnessed the execution of this "hands on" policy upon other inmates who were physically beaten, denied medical treatment, and restricted to their cubicles. *Id*. at ¶ 2. During this time period, he was informed by other inmates that any attempt to file a civil action would result in mail interference and that inmate would be put on the "burn," which is a "custom or policy [that] causes victim inmates to experience denials

---

[1] In directing service of the Amended Complaint, Judge McAvoy stated that he "expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment." Dkt. No. 11 at p. 2.

of privileges he could otherwise expect to enjoy." *Id*. at ¶ 3.

In April 2009, Plaintiff began a "letter writing campaign" wherein he submitted letters to ten prison advocacy groups concerning the activities he witnessed at Franklin, such as the "hands on" and "burn" policies. *Id*. at ¶ 4. Having only received three responses, Plaintiff believes that "the others are intercepted by the mailroom supervisor." *Id*. During the year that followed, from approximately April 2009 through June 2010, Plaintiff experienced the effects of this informal policy firsthand when he was continuously "singled out" and retaliated against. Such retaliation manifested itself in denials of recreation, attendance to the law library, attendance to the general library, religious activities, and "preferable meals" in the cafeteria. *Id*. at ¶ 5. Plaintiff also asserts that his mail was constantly intercepted and that such interference caused him to miss a tolling deadline for filing a petition for a writ of *habeas corpus*. *Id*. at ¶¶ 4, 7, 13, 14, & 19. Plaintiff was also singled out by his housing unit officers who would subject him to multiple cube searches and bodily searches, give Plaintiff extra work detail, and call him "mean and demeaning names." *Id*. at ¶¶ 8 & 13. Throughout this time period, Franklin staff often indicated to Plaintiff that he was on a "list" controlled by the Superintendent and that this list informs and directs the officers as to which inmate should receive the "unconstitutional" treatment described above. *Id*. at ¶¶ 15 & 18.

On several occasions, Plaintiff was the victim of excessive force at the hands of unnamed corrections officers. For example, in April 2009, four unnamed officers confronted Plaintiff stating, "you wanna be a little smart ass huh," which Plaintiff perceived to be a reference to the letters he had recently written. *Id*. at ¶ 6. The officers then physically beat Plaintiff, denied him medical treatment, and placed him in cube confinement. *Id*. In May 2009, Plaintiff wrote a letter to Defendant Superintendent D.E. LaClair, notifying him of Plaintiff's intention to sue. *Id*. at ¶ 7. That

letter was returned to Plaintiff on the following day by four unnamed corrections officers, who, after stating to Plaintiff "you must like it," proceeded to physically beat Plaintiff, deny him medical treatment, and place him on cube restriction. *Id*. Another occasion of physical force occurred in June 2009 after Plaintiff confronted Defendant S. Brown, Deputy Superintendent of Security, to inform him of the acts of inmate brutality. *Id*. at ¶ 9. Brown laughed and told Plaintiff to file a grievance. *Id*. The manner of Brown's response left Plaintiff with the impression that Brown knew and approved of the customs and policies at Franklin. *Id*. The following day, Plaintiff was physically beaten by four unnamed corrections officers, one of which stated "you sure are one stupid motherfucker," leaving Plaintiff with the impression that this beating was in response to his complaints to Defendant Brown. *Id*. at ¶ 10. One month later, in July 2009, Plaintiff confronted Defendant LaClair to inform him of the habitual unconstitutional conduct at Franklin. *Id*. at ¶ 11. In response, LaClair yelled "stop it, just stop it. Your [sic] not a damn fool, your [sic] not crazy, are you. We got [sic] our own program here, just go with the flow of things, follow the program and nobodies [sic] gonna [sic] hurt you." *Id*. Upon hearing these statements, Plaintiff believed that Defendant LaClair was aware and approved of the ongoing abuse. *Id*. Later that day, Plaintiff was taken to a special housing unit (SHU) and physically beaten. *Id*. As a result of the physical force exerted upon him, Plaintiff could not move his left arm and his left eye was completely closed. *Id*. Then, in September 2009, Plaintiff's requests to Defendant Nurse Administrator Armstrong were not obliged and he was denied sick call. In his letters to Defendant Armstrong, Plaintiff asserted that he needed medical care because of the physical beatings he received from corrections officers. *Id*. at ¶ 14. The following day, Plaintiff's correspondence was returned by four unnamed corrections officers, who told him they were "sick of his shit" and then beat him. *Id*. As with the prior beatings,

Plaintiff was denied medical care and placed in cube restriction. *Id*.

As previously noted, Plaintiff asserts that all these acts took place in conformity with Defendant LaClair's informal policy and custom, which creates an environment where "staff feel [that] they can do 'whatever' they want, and the inmate has no rights or redress in function or reality." *Id*. at ¶ 21. Plaintiff further contends that Defendants Brown, Armstrong, and Doe were aware of the existence of LaClair's sanctioned "informal custom or policy" and took no action to correct or report it, and in fact directly participated in it by "directing subordinates to adhere to its protocol." *Id*. at ¶ 22.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is

*integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the

---

[2] By its opinion in *Bell Atlantic Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561-63 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*. at 563.

speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B. Plaintiff's Claims

By his Amended Complaint, Plaintiff asserts that Defendants violated his rights guaranteed by the First, Eighth, and Fourteenth Amendments. Am. Compl. at Legal Claims. Liberally construed, Plaintiff alleges that, in retaliation for exercising his First Amendment rights, he was placed on the Superintendent's "list" and, by virtue of the Superintendent's informal custom/policy, corrections officers were encouraged to single him out for discriminatory treatment. Furthermore, such conduct was sanctioned by the Superintendent, and none of the other named Defendants intervened to prevent the constitutional violations. Plaintiff also seems to suggest a claim of medical indifference, in violation of the Eighth Amendment, against Defendant Armstrong, and interference with his legal mail, in violation of the First Amendment, against Defendant Jane Doe. By their Motion, Defendants assert that Plaintiff has failed to state a cognizable cause of action pursuant to § 1983.

*1. Claims Against Defendants LaClair and Brown*

We first address Plaintiff's claim that Defendant LaClair perpetrated an informal policy or custom that both encouraged and directed subordinate officers to engage in discriminatory and unconstitutional behavior.

In accordance with the motion to dismiss standard of review stated above, this Court is required to assess the plausibility of Plaintiff's claims. As the Supreme Court noted, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). In reviewing the Amended Complaint in this manner, we find that the entirety of Plaintiff's claims of an informal custom or policy are nothing more than conclusions with no inclusion of concrete facts to show that Plaintiff is entitled to some relief.

None of the real offenders – the corrections officers who allegedly directly participated in the wrongdoing – are named as Defendants. Instead, Plaintiff feebly links the patently unconstitutional conduct of these unnamed employees to the proverbial "higher ups" who oversee the day-to-day operations of the facility, such as the Superintendent, the Deputy Superintendent for Security, the Nurse Administrator, and the Mailroom Supervisor. Instead of including these Defendants in this lawsuit based upon their supervisory liability, Plaintiff attempts to weave them into this lawsuit by implausibly declaring that the named Defendants created/enforced an informal policy or custom which made the unnamed offenders' acts possible. In effect, he is trying to say that

each of the Defendants directly participated in the year-long assault against him by creating an environment by which such behavior was not only tolerated, but encouraged. In making this leap of faith, Plaintiff provides nothing more than conclusory statements and hearsay. Not only does he fail to provide any direct facts to back up his assertions, but he also fails to provide a scintilla of circumstantial facts to allow any reasonable person to draw the same conclusion.

In light of the standard enunciated in *Iqbal*, we find that Plaintiff's claims regarding the informal custom or policy are not plausibly stated and are conclusory in nature; thus, such claims should be **dismissed**. In making this recommendation, we note that the strength of Plaintiff's Amended Complaint lies not in this policy/custom claim, but rather, in its recitation of excessive force, retaliation, interference with mail, and denial of medical care, which all could have been plausibly stated against those individual unnamed corrections officers. We note that this Court's recommendation to dismiss the policy/custom claims against the named Defendants shall in no way affect Plaintiff's ability to amend his Amended Complaint to include any of these corrections officers whom he alleges directly violated his constitutional rights.

Although we've recommended dismissal of the policy/custom claims against the Defendants, we find that a liberal construction of Plaintiff's Amended Complaint would allow him to proceed on his claims of retaliation against Defendants LaClair and Brown.

Because retaliation claims may be easily fabricated by inmates, courts have scrutinized such claims with extra care. *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 467-68 (S.D.N.Y. 1998). In *Flaherty v. Coughlin*, the Second Circuit described three different methods of pleading retaliation, each requiring separate analysis by the court. 713 F.2d 10, 13 (2d Cir. 1983). First, a retaliation claim supported by "specific and detailed allegations" must be pursued with full discovery. *Id*.

(cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)). Whereas, a claim asserting retaliation in "wholly conclusory terms may safely be dismissed on the pleadings alone." *Id*. ("In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."). The third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation." *Id.* This third type of case will support at least documentary discovery. *Id.*

To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

Plaintiff states that in April 2009, he wrote several letters to prison advocacy groups; he believes that this letter-writing campaign became the basis for corrections officers targeting him. Am. Compl. at ¶¶ 4-5. In May 2009, Plaintiff wrote a letter to Defendant LaClair regarding his intent to sue, though it is not entirely clear whether this correspondence reached its intended destination. *Id*. at ¶ 7. Then, in July 2009, Plaintiff had a face-to-face interaction with LaClair, at which time Plaintiff informed him of the unconstitutional conduct. *Id*. at ¶ 11. LaClair, in response, yelled at Plaintiff "stop it, just stop it. Your [sic] not a damn fool, your [sic] not crazy, are you. We got [sic] our own program here, just go with the flow of things, follow the program and nobodies [sic] gonna [sic] hurt you." *Id*. Later that day, Plaintiff was taken to SHU and physically beaten. The reasonable inference to be drawn from these allegations is that in retribution for Plaintiff

*-10-*

speaking out, whether to individuals outside the facility or to LaClair himself, he was isolated and beaten. While Plaintiff fails to allege any direct involvement by Defendant LaClair, i.e., direct order to retaliate, the temporal proximity of his confrontation with LaClair and the physical beating is enough, at this stage of the action, to find that Plaintiff has plausibly pled a retaliation claim against Defendant LaClair and should be allowed to proceed to discovery.

The same analysis holds true for Defendant Brown. Plaintiff asserts that in June 2009, Plaintiff confronted Defendant Brown about the problems he'd been experiencing, such as being the target of excessive force and guard brutality. Am. Compl. at ¶ 9. In a mocking tone, Defendant Brown told him to file a grievance. The following day, Plaintiff was physically beaten by corrections officers who uttered derogatory comments to Plaintiff. *Id*. at ¶ 10. Because of the temporal proximity of the adverse conduct to the oral complaints Plaintiff lodged to Defendant Brown, we find that at this stage, he has plausibly pled a cause of action for retaliation against Defendant Brown.

### 2. *Claims Against Defendant Armstrong*

Plaintiff asserts that in September 2009, he twice issued written requests to Defendant Armstrong seeking medical attention for his swollen left eye and pain in his back and neck. Am. Compl. at ¶ 14. While there is some contradictory statements in the Amended Complaint regarding whether Defendant Armstrong received these requests, Plaintiff categorically states that she denied him medical care with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). The Second Circuit has stated that a medical need is objectively sufficiently serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

In the case at bar, Plaintiff fails to allege an objectively serious medical condition. Simply put, his complaints of neck and back pain, and even a swollen eye, which allegedly occurred from a physical beating he received two months earlier, is not a "condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702. Because Plaintiff fails to show an objectively serious medical need, we need not reach the question of whether he adequately pled the requisite subjective state of mind. Thus, in light of Plaintiff's failure to plausibly show an entitlement to relief, we recommend that Defendants' Motion to Dismiss be **granted** as to the Eighth Amendment claims stated against Defendant Armstrong and that Defendant Armstrong be **dismissed** from this action.

### 3. *Claims Against Defendant Jane Doe*

Several times throughout his Amended Complaint, Plaintiff alleges that his mail was

tampered with or intercepted, though he never provides any facts supporting his contention that the sabotage occurred at the hands of the Mailroom Supervisor. *See* Am. Compl. at ¶¶ 4 (mailroom supervisor intercepted letters sent to prison advocacy groups), 7 (correspondence to Superintendent returned), 13 (legal mail censored), & 19 (inability to send or receive legal mail). It appears that Plaintiff seeks to hold Defendant Jane Doe, whom he identifies as the Mailroom Supervisor, responsible for the alleged mail interference, perhaps merely because of her supervisory status in the mailroom. He further alleges that, as a result of such interference, he missed the tolling deadline to file a legitimate petition for a writ of *habeas corpus*, which, if submitted, would have been granted and he would have been released from prison. *Id*. at ¶ 19 & p. 15.[3]

Because Plaintiff has not identified this individual, she has not been joined in this action, and those Defendants who have appeared have not included her in their Motion to Dismiss. Nevertheless, pursuant to the authority provided by 28 U.S.C. §§ 1915(e) and 1915A, this Court may review this claim at any time and recommend dismissal should we determine that Plaintiff fails to state a claim upon which relief could be granted. It is under this authority that we *sua sponte* review the claim against the Doe Defendant.

Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). The Second Circuit has stated that in order to state a claim for denial of access to the courts via interference with legal mail, the plaintiff must allege that the defendant caused actual injury, i.e., the defendant "took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Id*. (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)

---

[3] This page number citation refers to the number automatically assigned by the Court's Case Management Electronic Case Files System.

(further citations omitted); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Furthermore, the prisoner must show that the prison officials "regularly and unjustifiably interfered with the incoming legal mail[.]" *Cancel v. Goord*, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James*, 782 F.2d at 1139); *see also Morgan v. Montaneye*, 516 F.2d 1367, 1371 (2d Cir. 1975) (isolated incident of tampering is insufficient to state a constitutional violation). Note, however, that the Second Circuit has held that as few as two incidents of mail tampering may be sufficiently actionable "(1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis v. Goord*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d at 1139). Thus, in cases, such as the present one, where the incidents are few and a violation is not patent, the plaintiff should specifically allege invidious intent or actual harm. *See Davis v. Goord*, 320 F.3d at 351 (citing cases). Furthermore, mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp 864, 871 (S.D.N.Y 1995) (citing *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986)).

In the case at bar, Plaintiff has not pled with adequate specificity the role in which Defendant Doe played in purportedly interfering with his mail, nor has he shown that she acted with an invidious intent. Indeed, the allegations against this Defendant appear to be nothing more than an afterthought, and very little substance is alleged. Thus, we recommend that Defendant Doe be **dismissed** from this action in accordance with 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 28) be **granted in part** and **denied in part** as follows:

1. **Granted**, as to claims against all Defendants regarding an informal custom or policy;

2. **Granted**, as to claims of Eighth Amendment medical indifference against Defendant Armstrong and that she be **dismissed** from this action; and

3. **Denied**, as to claims of retaliation against Defendants LaClair and Brown;

and it is further

**RECOMMENDED**, that in accordance with the authority granted in 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A, the claims against Defendant Jane Doe be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: December 20, 2011
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge